**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SERGIO GOMEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | **4:24-CV-1158** |
| **TEXAS STATE UTILITIES, AKA** | § | |
| **TSU ONE, AKA TSU TEXAS** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Sergio Gomez, hereinafter called "Plaintiff," complaining of and about Texas State Utilities, AKA TSU One, AKA TSU Texas, hereinafter called "Defendant," and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.      Plaintiff Sergio Gomez is a resident of the State of Texas and resides in Dallas County, Texas.

2.      Defendant's corporate headquarters is 3112 Wichita Street, Fort Worth, Texas 76140. Defendant Texas State Utilities, AKA TSU One, AKA TSU Texas may be served by serving Corporation Services Company d/b/a Lawyers Incorporating Service Company, 211 E. 7TH Street, Suite 620, Austin, Texas 7870 or wherever it may be found. ***Issuance of a summons is hereby requested***.

**JURISDICTION**

3.      The action arises under 42 U.S.C. Section 1983 et. seq. as hereinafter more fully appears.

4.      This Court has supplemental jurisdiction over state law claims discussed below

under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5.    This action seeks equitable relief, actual, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for violations of the Title VII of the Civil Rights Act of 1964 (Title VII) under 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Texas Labor Code, Chapter 21 suffered by Plaintiff in the course of his employment with Defendant. This is also an action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 621 et. seq., as amended by the Civil Rights Act of 1991 to correct unlawful employment practices based on age.

## CONDITIONS PRECEDENT

6.    All conditions precedent to jurisdiction have occurred or been complied with a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7.    Plaintiff is a brown colored Latino male born in the country of Mexico.

8.    Defendant is a utility contracting company specializing in the installation of underground electric, gas, and telecommunication infrastructure for residential and commercial projects.

9.    Defendant hired Plaintiff as a UG/OH Electric Terminator position on January 16, 2023..

10.    From the start of his employment, Plaintiff was treated discriminatorily and

subjected to a hostile work environment.

11.     Plaintiff worked with other employees as group including Ismael Gomez, Abel Gomez, and Luis Gerardo Armendariz.

12.     From the start of his employment, Defendant knew that Plaintiff's country of origin was Mexico, that he was Hispanic/Latino, and brown color. Defendant was also aware that Plaintiff primarily spoke Spanish and was most comfortable in speaking and writing the Spanish language as were the group of employees that he worked with.

13.     Ismael Gomez was the foreman of Plaintiff's team.

14.     The supervisor for Plaintiff and his team was a white male, Donald Jacobs ("Jacobs").

15.     During his time working for Defendant, Donald Jacobs, often used derogatory terms when talking to and addressing Plaintiff, including calling him a "wetback" and referring to the other team members as the same since they were also Hispanic men of Mexican origin.

16.     Specifically, Jacobs targeted men who were born in foreign countries and not specifically born in the United States.

17.     During this time, a lot of the equipment or tools that was used belonged to the Plaintiff and other team members. Some of the equipment did belong to the Defendant but much of it was the personal property and tools of the Plaintiff and team members.

18.     During the employment, Defendant, would often not pay Plaintiff's on time and not pay him or other Hispanic/Latino or non-United States born workers the right amount.

19.     Combined with the derogatory language, hostile attitude and lack of on time and accurate payroll, Plaintiff confronted Defendant about this discriminatory behavior.

20.     Because of this, Jacobs threatened Plaintiff by telling him if he did not stop

complaining about the discriminatory practices, Jacobs would cut his pay even more and if he quit, he would make sure he did not get another job in the industry. Defendant had a habit of doing this as he did it to the aforementioned members of Plaintiff's work team.

21.    Plaintiff knew that this did not happen to any of the non-Hispanic, non-Latino workers, non-foreign born people; this was geared towards him because he was as Jacobs put it a "wetback."

22.    Jacobs on several occasions made the distinction and reference to people who were not born here as being less than American-born workers and Jacobs showed this by treating them differently than he treated other people.

23.    Throughout the time there, Jacobs also became aware that Plaintiff would use his own personal tools as well as company tools.

24.    Ultimately the hostility and the discrimination were too much for any reasonable person to take on, including Plaintiff. Plaintiff ultimately had no other choice but to take time from the position.

25.    Plaintiff, through his foreman, notified Defendant about these issues.

26.    Defendant accused Plaintiff of theft of property and filed a police report against Plaintiff knowing full well that Plaintiff had not stolen any tools and that Plaintiff in fact used most of his own tools. This is another example of the hostility and retaliatory nature of Defendant.

27.    Ultimately, the police investigated and took no action against Plaintiff and others that Defendant fired.

28.    Ultimately, Plaintiff filed a wage claim with the State of Texas and was awarded some of the stolen wages by Defendant showing that there is merit to the fact that Defendant would not pay Plaintiff regularly and accurately.

## RACE, COLOR AND NATIONAL ORIGIN DISCRIMINATION

29.     Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

30.     Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to discriminate against someone based on race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

31.     To establish a prima facie case of discrimination, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 64). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

32.     With respect to the first requirement, Plaintiff is a Mexican born, Latino/Hispanic brown colored male and therefore is a member of a protected class.

33.     Plaintiff was qualified for his position based on: (i) his past training and experience, (ii) his past positive performance feedback with Defendant; (iii) hiring by Defendant and desire to keep him working there.

34.    However, despite the foregoing qualifications, Plaintiff received adverse employment action in the form of a hostile work environment, retaliation based on Plaintiff's race/color/national origin and non-advancement, false and negative job reference regarding working ability. Defendant's management team know about and allowed it to persist. Not only did Defendant know about it but Defendant created an environment so that discrimination, hostility, and retaliation permeate the culture.

35.    Ultimately, Plaintiff was treated different that non-Latino/Hispanic, non-United States-born employees. If Plaintiff had been any other race, color, or national origin, he would not have suffered such hostile treatment and would have been paid accurately and be given an accurate and truthful reference regarding his work ability and skillset.

36.    The unlawful employment practices of Defendant specifically failing to prevent and/or promptly correct the discriminatory behavior of Plaintiff's management, had a disparate and adverse impact on Plaintiff because of his race, color, and national origin. Such employment practices were not job-related and were not consistent with business necessity.

37.    Defendant discriminated against Plaintiff in connection with the terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race, color and national origin in violation of 42 U.S.C. Section 2000e-(2)(a).

38.    Plaintiff alleges that Defendant discriminated against Plaintiff based on race, color, national origin and age with malice or with reckless indifference to the state-protected rights of Plaintiff. Defendant had actual knowledge of the racially motivated hostility being perpetrated against Plaintiff by management and other stuff. Despite this knowledge, Defendant failed to appropriately resolve the situation.

39.    Defendant engaged in unlawful employment practices involving Plaintiff because of his race, color, and national origin.

## RETALIATION

40.    Plaintiff incorporates on the preceding paragraphs herein.

41.    A claim for retaliation is established when plaintiff demonstrates he (i) "engaged in an activity protected by Title VII; (ii) was subjected to an adverse employment action; and (iii) a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015) (finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

42.    Plaintiff alleges he was subjected to a campaign of retaliation which included continuation of a hostile work environment, reduction in pay, non-payment, poor work references, reported as theft of equipment, all because Plaintiff reported claims of discrimination to manager Jacobs.

43.    Plaintiff suffered adverse employment actions in the form of a hostile work environment, increasing harassment and bullying after making complaints to Defendant about the working conditions, discriminatory practices, payment owed, lack of accurate payroll payment. Had Defendant taken the steps necessary to address Defendants' discriminatory behavior or actions towards Plaintiff would still be working for Defendant, would not have had to undergo a

police investigation, would not have had to fight to begin a successful wage claim as he did and did receive a portion of his stolen wages.

44.     This retaliation was and is due to Plaintiff exercising his rights by opposing a discriminatory practice. Namely, making reports to his supervisor about racial discrimination and harassment as well as participating in the investigations of the underlying incidents as the basis of Plaintiff's complaints.

45.     Plaintiff suffered damages for which Plaintiff herein sues.

## HOSTILE WORK ENVIRONMENT

46.     Plaintiff incorporates on the preceding paragraphs herein.

45.     Title VII is violated "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Id.*; *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). The Supreme Court set the "severe or pervasive" standard as a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris*, 510 U.S. at 21. A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

46.     Plaintiff was subjected to a hostile workplace because of passive aggressive behavior which includes calling Plaintiff derogatory names, not paying him what he is owed, reducing payment, calling the police to accuse Plaintiff of theft essentially filing a false police report and ultimately being a false negative job reference. All of which created an objectively

hostile workplace affecting the terms and conditions of Plaintiff's employment and designed to hinder his ability to perform work functions.

47.     Defendant had actual knowledge of the hostile workplace Plaintiff endured when he made repeated complaints to management.

48.     Defendant failed to thoroughly investigate or otherwise resolve this hostile work environment.

49.     The actions, or lack thereof, by Defendant and its employees, created an abusive working environment that operated to alter the conditions of Plaintiff's employment.

## RESPONDEAT SUPERIOR AND RATIFICATION

50.     Whenever in this complaint it is alleged that the Defendant did any act or thing, it is It meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## DAMAGES

51.     Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a.     All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b.     Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c.     All reasonable and necessary costs incurred in pursuit of this suit;

    d.     Emotional pain;

    e.     Expert fees as the Court deems appropriate;

  f.  Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

  g.  Inconvenience; and

  h.  Interest.

## EXEMPLARY DAMAGES

52. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## SPECIFIC RELIEF

53. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

  i.  Prohibit by injunction the Defendant from engaging in unlawful employment practices; and

  j.  Neutral job reference; and

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Sergio Gomez, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell
State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
200 W. Oak Street
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**